IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　　　　　　　v.<br><br>ONE (1) YELLOW CONTENDER VESSEL (NAMED: AVA, REGISTER NUMBER PR1825-AB, HULL NUMBER JDJ23053E292), WITH TWO MOTORS AND APPURTENANCES,<br><br>　　Defendant. | CIVIL NO. 19-1374 (PAD) |

**OPINION AND ORDER**

Before the Court is claimant Reimundo J. Román-Benjamín's "Motion to Dismiss Verified Complaint Under Rule 12(b)(6) of the Federal Rules of Civil Procedure" (Docket No. 15), which the government opposed (Docket No. 19). Claimant replied (Docket No. 20), and the government sur-replied (Docket No. 25). For the reasons stated below, claimant's motion to dismiss is DENIED.

## I.　　FACTUAL BACKGROUND[1]

On October 4, 2018, agents from the Customs and Border Protection ("CBP"), Air and Marine Operations ("AMO") Air Unit ("AU"), identified a vessel that was exiting the island of Vieques, Puerto Rico, and heading to Naguabo, Puerto Rico. These agents observed that the vessel in question was loaded with multiple bags commonly used for smuggling controlled substances and was traveling without navigation lights on. The agents contacted agents of CBP AMO, Marine Interdiction ("MI"), from the Fajardo Unit and informed them of the situation, further providing

---

[1] Except as otherwise noted, the facts included in this Section are drawn from the pleadings asserted in the verified complaint (Docket No. 2) and the unsworn declaration dounder penalty of perjury under 28 U.S.C. § 1746 by Javier A. Hance, Special Agent of the U.S. Immigration and Customs Enforcement Agency ("ICE") assigned to Homeland Security Investigations ("HIS") (Docket No. 2-1).

the heading and description of the surveilled vessel. CBP AMO AU agents saw the vessel beach in Naguabo and observed multiple individuals coming out of a residential structure, running towards the vessel. Those individuals unloaded the bags from the vessel and carried them inside the structure. Moments later, the agents observed a pick-up truck leaving the residence with the bags on its truck bed and exiting the area. According to special agent Hance, this is common practice during drug smuggling ventures.

CBP AMO MI agents arrived at the area and noticed a sea vessel in the Naguabo Waterfront Pier that matched the same descriptions provided by the CBP AMO AU agents. That vessel was identified as a Caribe Rhino boat, with the Puerto Rico Department of Natural Resources ("PRDNR") Registration No. PR-7036-AC. The agents approached the captain and owner of the vessel, who was later identified as Mr. Román-Benjamín, the claimant, and another individual identified as Mr. Arioc Díaz-Meléndez. The CBP AMO MI agents asked Mr. Román-Benjamín and Mr. Díaz-Meléndez whether they had just arrived and from where they were coming from, to which Mr. Díaz-Meléndez responded that they were coming from Vieques. The agents then detained Mr. Román-Benjamín and Mr. Díaz-Meléndez.

Law enforcement personnel asked Mr. Román-Benjamin for consent to search and conduct a canine inspection of the Caribe Rhino boat, to which he agreed. During the search, law enforcement personnel found a bag containing 10 rounds of .40 caliber ammunition, one gram of marihuana, and a bottle of dish soap with less than half of its contents. A K-9 inspection tested positive for the presence of unspecified controlled substances on the boat. HSI personnel in Fajardo also investigated the beach where the boat made landing and found three bottles of bleach. Special agent Hance indicates that, during drug smuggling ventures, it is common practice for smugglers to hide the scent of controlled substances using this chemical. On October 6, 2018, HSI

personnel read Mr. Román-Benjamín his Miranda rights, which he signed, and invoked his right to an attorney.[2]

Some months later, on January 16, 2019, CBP AMO MI agents observed Mr. Román-Benjamín arriving by sea to the Roosevelt Roads Old Naval Base in Ceiba, Puerto Rico, in the vessel subject of the complaint, a yellow Contender sea vessel, named "Ava," with PRDNR Registration No. PR-1825-AB, Hull No. JDJ23053E292, with 2 motors and appurtenances (hereinafter, the "Contender").  The agents approached Mr. Román-Benjamín and he told the agents that he was coming from Vieques to take a sea captain course.  The agents asked him for consent to search the Contender and he agreed.  During the search, the agents found that the vessel was registered in the name of another individual, identified as Juan Ledesma-Rodríguez, and discovered that the vessel was missing the hull number.  The agents conducted a K-9 inspection of the vessel, which tested positive for the presence of unspecified controlled substances.  The CBP AMO MI agents seized the vessel, although they did not detain Mr. Román-Benjamín.

On January 22, 2019, HIS special agents interviewed Mr. Ledesma-Rodríguez.  He informed the agents that he had sold the Contender to Mr. Román-Benjamín in November 2018, for $26,000.00 in cash.  Further, he indicated that he had attempted to change the registration of the vessel in favor of Mr. Román-Benjamín, but the latter had been unavailable to finalize the change.  On that same date, Mr. Ledesma-Rodríguez signed a "Notice of Abandonment and Assent to Forfeiture of Prohibited or Seized Merchandise and Certificate of Destruction" form, regarding the Contender.  See, Docket No. 19-1.

---

[2] Given the sequence of events as described by special agent Hance in his unsworn declaration, the court assumes that Mr. Román-Benjamín was not taken into custody on October 6, 2018.

Later that day, HSI personnel interviewed Mr. Román-Benjamín, during which he confirmed that he bought the Contender from Mr. Ledesma-Rodríguez, for use in his tourism business. He added that: 1) he provided half of the money for the purchase of the vessel; 2) his brother, Dennis Román-Benjamín, provided the other half; 3) he and his brother obtained the money through a loan with Banco Popular of Puerto Rico; and 4) their father, Dennis Román-Colón, served as a guarantor to the loan.

## II.   PROCEDURAL HISTORY

On March 3, 2019, claimant filed a "Demand for Release of Seized Property Pursuant to 18 U.S.C. § 983(f)" before the court in Misc. No. 19-100 (CCC). See, Misc. No. 19-100 (CCC), Docket No. 1.  In that motion, claimant alleged that the Contender vessel was seized by the government on January 18, 2019, in Fajardo, and that the Fines, Penalties and Forfeiture Office (FPFO) of the CBP had initiated administrative proceedings to seize the vessel, having provided to claimant a notice of administrative forfeiture of the Contender pursuant to 28 C.F.R. § 8.9. Id. at 3.  Claimant asserted that on February 1, 2019, and again on March 1, 2019, he sent letters to the government, stating that he was applying for a release of the Contender due to hardship, pursuant to Section 983(f) of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 982(f)(2).  Id. at 3-4; see also, Misc. No. 19-100 (CCC), Docket Nos. 1-2 and 1-3.  However, claimant stated that because the agency allegedly did not respond to his letters, he instituted an action for a hardship release of the vessel in Misc. No. 19-100 (CCC).

On May 7, 2019, the government filed an opposition to claimant's demand, stating that the Contender was seized by ICE HSI on January 23, 2019, in Ceiba, and that ICE HIS notified claimant of the administrative forfeiture proceedings on February 7, 2019. See, Misc. No. 19-100 (CCC), Docket No. 6, at pp. 1-2.  The government pointed out that it received one of the letters

sent by claimant requesting a hardship release of the vessel, as well as a "Verified Claim of Ownership" dated February 28, 2019, through which claimant requested that the administrative proceedings be placed before a U.S. District Court for judicial forfeiture proceedings. Id. at 2; see also, Misc. No. 19-100 (CCC), Docket No. 6-1.

More importantly, by May 7, 2019, the date of the government's opposition in Misc. No. 19-100 (CCC), Docket No. 6, the government had already initiated the civil *in rem* forfeiture case now before the court, which was filed on April 17, 2019. Accordingly, in said motion, the government informed the court, the claimant and his attorney, that the instant case had been filed to obtain judicial forfeiture of the Contender, which would allow claimant the opportunity to present his claims and defenses in this case, and, for those reasons, prompted the court in Misc. No. 19-100 (CCC) to dismiss claimant's demand for release as moot. See, Misc. No. 19-100 (CCC), Docket No. 6, at p. 2. Notwithstanding, on September 10, 2019, the court in Misc. No. 19-100 (CCC) entered an Opinion and Order and Judgment denying and dismissing claimant's demand for release of the vessel, finding that he had not met his burden under 18 U.S.C. § 983(f)(6) of demonstrating that he met all the requirements set forth in § 983(f)(1) to show that he was entitled to an immediate release of the Contender vessel due to hardship. See, Misc. No. 19-100 (CCC), Docket Nos. 12 and 13; see also, In re One (1) Yellow Contender Vessel, 2019 WL 9143418 (Sept. 10, 2019).

Now before the court is the government's civil action *in rem* under 18 U.S.C. § 1355 to enforce the provisions of §§ 981, 982 and 1956, requesting a judgment condemning and forfeiting the Contender to the government (Docket No. 2). As requested by the government, the verified complaint was initially filed under seal and the case stayed on the basis of 18 U.S.C. § 981(g) while the government concluded its criminal investigation of claimant. See, Docket Nos. 1, 3, 5

and 7. The government also requested an arrest warrant to take custody of the Contender, which the court granted on July 18, 2019, and issued on July 23, 2019. See, Docket Nos. 4, 6 and 8.

On May 4, 2021, claimant filed an "Emergency Motion to Unseal These Proceedings," requesting that the case be unsealed, the stay lifted, and the complaint dismissed (Docket No. 9). On May 6, 2021, the government responded, stating that there was no longer any need to keep the case sealed and stayed (Docket No. 11).[3] Accordingly, on May 6, 2021, the court unsealed the case and lifted the stay, but denied claimant's request to dismiss the complaint, instead allowing him to file a separate motion to dismiss that included legal authorities and caselaw "arising out of analogous facts and procedural settings in support of the request, specifically discussing the allegations in light of that caselaw." (Docket No. 12). Claimant filed his motion to dismiss, and all responsive motions have been submitted (Docket Nos. 15, 19, 20 and 25).

### III.    DISCUSSION

The government maintains that, based on the facts set forth in special agent Hance's unsworn declaration, there is probable cause to believe that the seized Contender is related to illicit drug activities or the laundering of illegal drug proceeds (Docket No. 2-1, at p. 5).[4] Claimant requests that the court dismiss the complaint, arguing essentially that: 1) the complaint was impermissibly sealed and stayed in alleged contravention to CAFRA; 2) the complaint is untimely because it was filed after the 90-day period provided by 18 U.S.C. § 983(a)(3)(B) from the date the government received his claim. The government opposes, sustaining that: 1) the pleadings

---

[3] The government has since conceded there is no ongoing criminal case against claimant. See, Docket No. 25, at p. 4.

[4] The court is not entirely certain of the government's position as to the illegal drug or money laundering activities related to the Contender, as the unsworn declaration is conclusory. See, Docket No. 2-1 (stating that "based on the facts . . . there is probable cause to believe the seized vessel represent money laundering of illegal drug proceeds activities in Puerto Rico"). Nonetheless, at this juncture, the court reads the pleadings in the light most favorable to the government, as the non-moving party. See, Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008)(stating rule).

adduce sufficient facts to establish a viable case for forfeiture; 2) the complaint was filed in compliance with all applicable requirements; 3) the government was under no obligation to notify claimant of the complaint because the owner of the Contender is Mr. Ledesma-Rodríguez, not claimant, and Mr. Ledesma-Rodríguez was notified; 4) claimant lacks standing to move to dismiss because he has failed to provide sufficient evidence to demonstrate his ownership of the vessel (Docket Nos. 19 and 25). Claimant counters, claiming that he has standing because he is its rightful owner, as demonstrated by his "Verified Statement of Interest" regarding the Contender (Docket Nos. 14 and 20).

### A. Standing

Because standing is a threshold issue, the court first considers the parties' arguments and filings on this matter.[5]

Standing is a "threshold consideration in all cases, including civil forfeiture cases." U.S. v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2003) (hereinafter, Bulger). As civil forfeitures are *in rem* proceedings, the property subject to forfeiture is the defendant, and claims and defenses against the proposed forfeiture may only be brought by third party intervenors. Id. In such cases,

---

[5] The court summarily rejects claimant's arguments that the case was impermissibly sealed and stayed and the complaint is untimely. Rule G(5)(ii) expressly contemplates the possibility that civil *in rem* proceedings may be filed under seal and stayed pending a criminal investigation. See, 28 U.S.C. § G(5)(a)(ii)(noting that claims must be filed "no later than 60 days after the filing, *not counting any time when the complaint was under seal or when the action was stayed*") (emphasis added); see also, 18 U.S.C. § 981(g)(1) (stating rule that, upon motion of the government, civil forfeiture proceedings may be stayed pending a criminal investigation). And, there is no question that claimant was aware that the Contender had been seized by HSI agents, that he then sent letters to the FPFO in February and March 2019 to pursue administrative remedies, and later, on March 3, 2019, he filed Misc. No. 19-100 (CCC) in an attempt to recover the vessel due to hardship. Furthermore, on April 17, 2019, the government filed the instant action and informed claimant of this fact via the government's opposing motion in Misc. No. 19-100 (CCC), Docket No. 6. In this sense, claimant had actual notice of the filing of the instant forfeiture action. Consequently, the government was under no further duty to notify claimant of the filing of the instant case, and claimant is therefore precluded from raising any arguments that he was injured in that regard. See, 28 U.S.C. § G(4)(b)(v)("A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice").

putative claimants must show that they have both constitutional and statutory standing. Id. (citation omitted).

**1.      Constitutional Standing**

To establish constitutional standing, a claimant must demonstrate an "ownership or possessory interest in the seized property." U.S. v. $8,440,190.00 in U.S. Currency, 719 F.3d 49, 57 (1st Cir. 2013). To satisfy this requirement, it is sufficient for claimants to show that they have a "colorable claim on the defendant property." Bulger, 326 F.3d at 41 (citation omitted); U.S. v. U.S. Currency, $81,000.00, 189 F.3d 28, 35 (1st Cir. 1999)(noting that "an allegation of ownership and some evidence of ownership are together sufficient to establish standing") ("$81,000.00"); U.S. v. Cambio Exacto, S.A., 166 F.3d 522, 526 (2nd Cir. 1999)(observing that although ownership and possession "generally may provide evidence of standing, it is injury to the party seeking standing that remains the ultimate focus"); U.S. v. 7725 Unity Ave. N., 294 F.3d 954, 957 (8th Cir. 2002)(pointing out that a claimant "need only show a colorable interest in the property, redressable, at least in part, by a return of the property")).

Claimant maintains that he purchased the Contender from Mr. Ledesma-Rodríguez, a contention which appears to have been verified by Mr. Ledesma-Rodríguez himself when he informed HSI special agents in January 2019 that he had sold the vessel to Mr. Román-Benjamín in November 2018, and that the registration change could not be completed due to Mr. Román-Benjamín's unavailability at the time. Furthermore, special agent Hance confirmed that on January 16, 2019, CBP AMO MI agents saw Mr. Román-Benjamín arriving to Ceiba in the Contender, and that he consented to the agents' search of the vessel, which suggests that he had a possessory interest in the vessel or sufficient authority to consent to the search. Mr. Román-Benjamín's ownership claim is further bolstered by the fact that, after the Contender was seized in January

2019, he promptly sent several letters to the government seeking administrative relief and later initiated judicial proceedings in Misc. No. 19-100 (CCC) to recover the Contender. Also, he signed and submitted a "Verified Claim of Ownership" in Misc. No. 19-100 (CCC) and a "Verified Statement of Interest" in the case now before the court, through which he declares under penalty of perjury that he is the rightful owner of the vessel. With this, the court finds that Mr. Román-Benjamín has sufficiently alleged and established constitutional standing.

### 2. Statutory Standing

Beyond constitutional standing, claimants "must also demonstrate that they have statutory standing to contest the forfeiture action." U.S. v. One Hundred Sixty-Five Thousand Five Hundred Eighty Dollars (165,580) in U.S. Currency, 502 F.Supp.2d 114, 122 (D. Me. 2007)(citing Bulger, 326 F.3d at 40) ("$165,580"). The federal forfeiture statute "defines rules as to who may intervene and when they must do it." Bulger, 326 F.3d at 40. Civil forfeiture cases are generally governed by the Supplemental Rules for Certain Admiralty and Maritime Claims. Id. at 40-41; see also, 18 U.S.C. §§ 981(b)(2)(A) and 983(a)(3)(A); 28 U.S.C. § A(2) (Supp. 5 2006)(stating that the Federal Rules Civil Procedure also apply to the extent that they are not inconsistent with the Supplemental Rules).

Statutory standing "is actually 'an element of the innocent owner's claim on the merits.'" $165,580, 502 F.Supp.2d at 122 n. 8 (quoting U.S. v. One Lincoln Navigator 1998, 328 F.3d 1011, 1014 (8th Cir. 2003)(noting that when a claimant has constitutional standing, but fails to prove an ownership interest as defined in 18 U.S.C. § 983(d)(6), he lacks "standing," in the sense that he has failed to establish on the merits a property interest entitling him to relief). An innocent owner is a claimant who "did not know of the conduct giving rise to forfeiture; or upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the

circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). Claimants have the burden of proving they are innocent owners "by a preponderance of the evidence." Id. § 983(d)(1). To qualify as an innocent owner, a claimant must show that he is an "owner" as defined in § 983(d)(6), which means "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest" and excludes, as relevant, "a person with only a general unsecured interest in, or claim against, the property or estate of another." Id. § 983(d)(6)(A) and (B).

Here, there is some evidence to suggest that claimant is the actual owner of the Contender vessel. For example, claimant has twice declared under penalty of perjury that he is its owner, and Mr. Ledesma-Rodríguez has stated that he indeed sold the vessel to claimant. Nevertheless, and despite ample opportunity to do so, claimant has not set forth any other documents that show that he holds legal title or a similar ownership interest in the vessel as required by 18 U.S.C. § 983(d)(6)(A). And, although Mr. Ledesma-Rodríguez signed a "Notice of Abandonment and Assent to Forfeiture of Prohibited or Seized Merchandise and Certificate of Destruction," by way of which he seemingly abandoned all rights and claims in and to the Contender (see, Docket No. 19-1), neither party has expounded on the significance of this document or of Mr. Ledesma-Rodríguez's apparent waiver. The parties have also not elaborated on the probative value or weight of the "Verified Claim of Ownership" or "Verified Statement of Interest" in demonstrating that claimant is owner of the Contender. And, even though the government contends that Mr. Ledesma-Rodríguez is the actual owner because he appears as the registered owner in PRDNR records, the evidence that the government has submitted in that regard is either contradictory (i.e., Mr. Ledesma-Rodríguez potentially waived all rights, titles and interests in and to the Contender via

the "Notice of Abandonment and Assent to Forfeiture of Prohibited or Seized Merchandise and Certificate of Destruction" and is therefore not its owner) or cannot be considered by the court because they are in the Spanish language. See, Docket No. 19-1; 48 U.S.C. § 864 (stating that "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language"); Local Civ. R. 5(g)(same).

To complicate matters, neither party has set out any arguments or provided specific legal authorities to assist the court in determining whether the evidence submitted so far is enough to allow a finding that Mr. Román-Benjamín is the bona fide owner of the Contender under Puerto Rico law, a critical step, given that state or local law determines the nature and extent of ownership interests. See, 81,000.00, 189 F.3d at 33 (indicating that state law determines ownership interests in a property); One Lincoln Navigator 1998, 328 F.3d at 1013, 1015 (same). Moreover, the parties have not explained nor included authorities on what constitutes a person with only a "general unsecured interest" in a property pursuant to 18 U.S.C. § 983(d)(6)(B), so as to foreclose the possibility of a determination of statutory standing to file a claim in a civil forfeiture case. Without this, the court is not in an adequate position to rule on whether claimant has a sufficient ownership interest in the Contender to allow him to present an innocent owner defense in the instant action. See, One Lincoln Navigator 1998, 328 F.3d at 1014-1015 (remanding case to district court to conduct further proceedings to determine whether claimants had ownership interest in the subject property within the meaning of 18 U.S.C. § 983(d)(6) and state law, whether they were innocent owners, and, if not, whether the property should be forfeited). And, the court will not do the litigants' work for them. See, U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . Consequently, a litigant

has an obligation to spell out its arguments squarely and distinctly")(citations and quotation marks omitted).

Even though the government states that claimant would not be able to prove that he is an innocent owner (see, Docket No. 19, at pp. 7-8), the court is not entirely persuaded, given that the unsworn declaration that the government relies on to bring this forfeiture action, aside from stating that K-9 units found that the Contender tested positive for unspecified controlled substances, is devoid of information pertaining to the role of that vessel, if any, in any unlawful activity or transaction involving proceeds of illegal drug activity.[6]

## IV.  CONCLUSION

For the reasons stated above, claimant's motion at Docket No. 15 is DENIED.  The court shall allow a brief period of discovery regarding claimant's statutory standing, innocent owner defense and right to recover the Contender, and the government's entitlement to forfeiture.

**SO ORDERED**.

In San Juan, Puerto Rico, this 16th day of March, 2022.

>  s/Pedro A. Delgado-Hernández
>  PEDRO A. DELGADO-HERNÁNDEZ
>  United States District Judge

---

[6] On this note, the court must state that it has serious reservations about the government's ability to establish, by a preponderance of evidence, that the Contender is subject to forfeiture.  The government will have to show that the Contender must be forfeited because it was used to commit, facilitate or was otherwise involved in the commission of a criminal offense.  See, 18 U.S.C. § 983(c)(stating the government's burden of proof).  However, the majority of the evidence submitted so far with regard to unlawful activities pertains to another sea vessel, the Caribe Rhino, in which claimant may also have been involved.  The only illegal activity identified by the government with regards to the Contender is that it tested positive for unspecified controlled substances during a K-9 search.  Despite these concerns, the court is aware that it may not dismiss the government's verified complaint on grounds that it "did not have adequate evidence at the time [it] was filed to establish the forfeitability of the property," 18 U.S.C. § 983(a)(2)(D), and therefore will not dismiss the complaint at this stage of the proceedings.